UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DUNKIN' DONUTS FRANCHISED
RESTAURANTS, LLC, BASKIN-
ROBBINS FRANCHISED SHOPS, LLC,
and DB REAL ESTATE ASSETS I, LLC,

    Plaintiffs,

v.

MR. OMAR, INC., a Michigan Corporation,
WAEL ELHAJORMAR, YOUSEF
ALKAWASMIE, individually, jointly, and
severally

    Defendants.
_____/

Case No. 06-15078

Honorable Patrick J. Duggan

**OPINION AND ORDER DENYING DEFENDANTS'
MOTION FOR LEAVE TO AMEND ANSWER**

At a session of said Court, held in the U.S.
District Courthouse, Eastern District
of Michigan, on October 22, 2007.

PRESENT:    THE HONORABLE PATRICK J. DUGGAN
                U.S. DISTRICT COURT JUDGE

This lawsuit arises from Mr. Omar, Inc.'s alleged breach of a franchise agreement entered into with Dunkin' Donuts Franchised Restaurants LLC and Baskin-Robbins Franchised Shops LLC and a sub-lease entered into with DB Real Estate Assets I LLC.[1]

---

[1] Unless otherwise specified, Dunkin' Donuts Franchised Restaurants LLC, Baskin-Robbins Franchised Shops LLC, and DB Real Estate Assets I LLC will be collectively referred to as "Plaintiffs" in this Opinion and Order. Unless otherwise specified, Mr. Omar, Inc. and

On November 13, 2006, Plaintiffs filed a complaint in this Court asserting the following counts: Count I (Declaratory Judgment – Termination of Franchise Agreement and Lease and Injunctive Relief); Count II (Trademark Infringement); Count III (Breach of Franchise Agreement); Count IV (Breach of Lease); and Count V (Breach of Personal Guarantees). Presently before this Court is Defendants' "Motion for Leave of Court to Amend Its Answer to Include Counter-Complaint and Its Affirmative Defenses." Plaintiff has filed a response to Defendants' motion. On October 19, 2007, the Court sent the parties a notice stating that the Court is dispensing with oral argument on Defendants' motion. *See* E.D. Mich. LR 7.1(e)(2).

## I. Background

On February 18, 2003, Plaintiffs' predecessors entered into a franchise agreement with Mr. Omar, Inc. ("Mr. Omar"). (Compl. Ex. A.) Defendant Wael Elhajomar, the president and sole shareholder of Mr. Omar, signed the franchise agreement as guarantor of Mr. Omar's monetary obligations. (Compl. Ex. A at 27.) In addition to the franchise agreement, on August 23, 2000, Third Dunkin' Donuts Realty, Inc., predecessor to DB Real Estate Assets I LLC, entered into a sub-lease with Mr. Omar.[2] Wael Elhajomar and Yousef Alkawasmie, in their individual capacities, guaranteed the performance of Mr. Omar under the terms of the sub-lease. (*Id.* at 11.)

---

Wael Elhajomar will be collectively referred to as "Defendants" in this Opinion and Order.

[2] The sub-lease is subject to the terms of the franchise agreement. (Compl. Ex. B ¶ 14.) Consequently, any default under the terms of the sub-lease results in a default under the franchise agreement. (*Id.* ¶ 9.0.5.) Furthermore, if the franchise agreement is terminated for any reason, DB Real Estate Assets I LLC has the right to terminate the sub-lease. (*Id.*)

2

On December 6, 2005, Plaintiffs notified Mr. Omar that it was in default under the franchise agreement and the sub-lease due to its failure to pay the required franchising fees, advertising fees, and rent. (Compl. Ex. D.) The December 6, 2005 Notice to Cure stated:

> This Notice shall serve as fifteen (15) days' prior written notice that Baskin Robbins/Dunkin' Donuts intend to terminate your franchise for your failure to pay advertising and franchise fees in the amount of $2,159.57 for Baskin Robbins and $6,8321.20 for Dunkin', late charges in the amount of $9.92 for Baskin Robbins and $94.92 for Dunkin', rent in the amount of $6,066.67 for Dunkin' and a tax deficit in the amount of $758.13 for Dunkin', payable pursuant to your Franchise Agreement and Lease Agreement.

(*Id.*)

Plaintiffs sent three more Notices to Cure on January 27, 2006, June 8, 2006, and July 25, 2006. (Compl. Ex. E-G.)

On September 13, 2006, Plaintiffs sent a Notice of Termination to Mr. Omar. (Compl. Ex. H.) The Notice of Termination stated that it "shall serve as an additional notice of the Termination of your above-referenced Franchise Agreement with Baskin Robbins and Dunkin' Donuts ('Franchisor') and any Lease with Franchisor, effective immediately." (*Id.*) In addition, Mr. Omar was notified that "[p]ursuant to Paragraph 9.1.4 of your Franchise Agreement, a cure period is no longer available to you since you did not timely cure the defaults." (*Id.*)

Notwithstanding the four separate Notices to Cure and the Notice of Termination, Plaintiffs allege that Mr. Omar did not pay the past due franchise and rental obligations; nor did Mr. Omar vacate the leased premises.

### B. Partial Settlement and Subsequent Events

On February 13, 2007, Plaintiffs filed a Motion for Temporary Restraining Order, Order to Show Cause, Preliminary Injunction, Declaratory Judgment and Summary Judgment. On April 26, 2007, the day the Court was to hold a hearing on Plaintiffs' motion, a partial settlement was placed on the record. The partial settlement was memorialized in a May 3, 2007 Order, which was entered by stipulation of the parties. (Doc. No. 17.) According to the May 3, 2007 Order, Defendants were required to, *inter alia*, cease operations related to the Franchise Agreement, vacate the leased premises, and take steps to de-identify the store. (*See id.* at 4-6.)

According to Plaintiffs, "Defendants ignored every provision of the Court's Order and, to this day, continue and remain in contempt of that Order for failure to take the steps to de-identify the store." (Pls.' Resp. Br. at 3.) To support this assertion, Plaintiffs have proffered the affidavit of Stephen Collin, an Operations Manager for Plaintiffs. (Pls.' Resp. Ex. 2. ("Collin Aff.").) Mr. Collin states that on June 26, 2007 he "went to Defendants [*sic*] franchise location and found them continuing to operate." (*Id.* ¶ 6.) On the evening of June 26, 2007, Mr. Collin spoke with Defendant Elhajormar and "advised him to follow the court's Order and close his restaurant . . . ." (*Id.* ¶ 7.) Mr. Collins went back to Defendants' franchised location on June 27, 2007 where he "noted many food safety issues and poor cleanliness." (*Id.* ¶ 8.) Defendant Elhajormar "finally agreed to close the location and allowed [Mr. Collins] to change the locks." (*Id.*) Nevertheless, Mr. Collins "agreed to allow [Defendant] Elhajormar access to the store to retrieve his equipment at a later date." (*Id.*) According to Mr. Collins, "after allowing [Defendant]

4

Elhajormar access to retrieve his equipment, [Mr. Collins] learned that [Defendant Elhajormar] had left the location in complete disarray including cutting some of the equipment from the plumbing pipes rather than disconnecting the same at the connections." (*Id.* ¶ 9.) Plaintiffs have not refuted the statements made in Mr. Collins's affidavit.

## II. Standard of Review

In their motion, Defendants cite Rule 13(f) and Rule 15(a) of the Federal Rules of Civil Procedure. Rule 13(f) provides that "[w]hen a pleader fails to set up a counterclaim through oversight, inadvertence, or excusable neglect, or when justice requires, the pleader may by leave of court set up the counterclaim by amendment." FED. R. CIV. P. 13(f). Moreover, where, as here, a responsive pleading has been filed, Rule 15(a) provides that "a party may amend the party's pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires." FED. R. CIV. P. 15(a). Leave to amend a pleading, however, should be denied if the amendment is brought in bad faith or for dilatory purposes, results in undue delay or prejudice to the opposing party, or would be futile. *See Foman v. Davis*, 371 U.S. 178, 182, 83 S. Ct. 227, 230 (1962).

## III. Discussion

### A. Proposed Counter-Complaint and Additional Affirmative Defenses

Defendants seek leave to amend their answer to add affirmative defenses and add their counter-complaint. Defendants assert "that justice so requires this Court to grant Defendants leave of court to amend its pleadings . . . to set up its [*sic*] counterclaims

5

against Plaintiffs and its [*sic*] recently revealed affirmative defenses because Defendants' counterclaims and other relevant affirmative defenses were not conveyed to Defendants' attorney until recently and subsequent to Defendants' attorney filing Defendants' answer . . . ." (Dfts.' Mot. for Leave at 2.) Plaintiffs contend that Defendants' "request to assert a counterclaim should be denied because Defendants' claims are made in bad faith, are futile, without merit, and are otherwise contractually barred." (Pls.' Resp. at 3.)

All of the Counts asserted in Defendants' proposed counter-complaint are based on an alleged misrepresentation made by Plaintiffs to Defendant Wael Elhajormar regarding an examination Defendant Elhajormar was required to take to become a franchisee. In the proposed counter-complaint, Defendants allege that "Plaintiffs told Defendant [Elhajormar] that he had passed the examination and was capable and qualified to run the business." (Pls.' Mot. Ex. A Counterclaim ¶ 3.) However, Defendants allege "[t]hat upon information and belief, Defendant [Elhajormar] really did not pass the franchise examination and was not qualified to become a licensed franchisee with Plaintiffs." (*Id.* ¶ 4.)

In an exhibit attached to their response brief, Plaintiffs proffer the affidavit of Jack Laudermilk, Associate General Counsel and Assistant Secretary for Plaintiffs. (Pls.' Resp. Ex. 3 (hereinafter "Laudermilk Aff.").) Mr. Laudermilk states that he has examined the relevant records and "the records reflect that Wael Elhajormar did take the exam previously given to every potential franchisee." (Laudermilk Aff. ¶ 4.) Mr. Laudermilk further states that the "records reflect that Mr. Elhajormar achieved a 'B' score" on the exam, which qualified him "to own and operate a Dunkin' Brands'

6

Franchise." (*Id.* ¶¶ 6-7.) Defendants have failed to refute Mr. Laudermilk's affidavit. Consequently, based on Mr. Laudermilk's sworn statements, this Court believes that allowing Defendants leave to amend to add the proposed counter-complaint would be futile.

Defendants also seek leave to amend their answer to add the following affirmative defenses:

> **SIXTEENTH AFFIRMATIVE DEFENSE**
> The contracts, which are the basis of Plaintiffs' claims, are voidable and unenforceable because the terms are unconscionable.
>
> **SEVENTEENTH AFFIRMATIVE DEFENSE**
> The contracts, which are the basis of Plaintiffs' claims, are voidable because they were induced by duress.
>
> **EIGHTEENTH AFFIRMATIVE DEFENSE**
> The contracts, which are the basis of Plaintiffs' claims, are void or voidable because Defendant MR. OMAR, INC, lacked capacity to enter said contracts.

(Dfts.' Mot. Ex. A at 17.)

This Court believes that Defendants are seeking leave to amend their answer to add affirmative defenses in bad faith and granting leave to amend their answer would result in undue prejudice to Plaintiffs.[3] Allowing Defendants' to amend their answer would condone Defendants' destructive actions and would significantly prejudice Plaintiffs, who must now repair the damage Defendants have caused to the franchised location and pay

---

[3]Moreover, to the extent that the proposed additional affirmative defenses are based on Defendant Elhajormar's assertion that he did not pass the franchise examination, leave to amend Defendants' answer will be denied because such defenses would be futile.

7

outstanding utility debts left by Defendants. (*See* Collin Aff. ¶¶ 9-11.) Consequently, Defendants will be denied leave to amend their answer to assert additional affirmative defenses.

### B. Requested Jury Demand

Although not mentioned in their motion, Defendants also request a jury demand in their proposed amended pleadings. Plaintiffs argue that this jury demand should be stricken because Defendants waived their right to a jury trial in the Franchise Agreement. The Franchise Agreement states in pertinent part:

> FRANCHISEE shall have the option to litigate any cause of action otherwise eligible for arbitration hereunder and shall exercise said option solely by filing a complaint in any court of competent jurisdiction in which FRANCHISEE expressly waives the right to a trial by jury and any and all claim(s) for punitive, multiple and/or exemplary damages.

(Pls.' Compl. Ex. A, Franchise Agreement § 11.6; *see also id.* §§ .) Defendants have failed to respond with evidence or any argument that they did not waive their right to a jury trial by virtue of entering into the Franchise Agreement.[4] *See, e.g., Northwest Airlines, Inc. v. Air Line Pilots Ass'n Int'l*, 373 F.2d 136, 142 (8th Cir. 1967)(holding that the Seventh Amendment right to a jury trial can be waived by contract). Therefore, this Court will strike Defendants request for a jury demand.

Accordingly,

---

[4]Furthermore, because the Court is denying Defendants' "Motion to Amend Its Answer to Include Counter-Complaint and Its Affirmative Defenses," Defendants' failure to request a jury trial within "10 days after service of" their answer resulted in a waiver of their right to a trial by jury. *See* FED. R. CIV. P. 38(b), (d).

8

**IT IS ORDERED**, that Defendants' "Motion for Leave of Court to Amend Its Answer to Include Counter-Complaint and Its Affirmative Defenses" is **DENIED**;

**IT IS FURTHER ORDERED** that Defendants' demand for a jury trial is **STRICKEN**.

s/PATRICK J. DUGGAN
UNITED STATES DISTRICT JUDGE

Copies to:
Kevin A.S. Fanning, Esq.
Douglas R. Kelly, Esq.
Mohamed J. Zaher, Esq.