UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DUNKIN' DONUTS FRANCHISED
RESTAURANTS, LLC, BASKIN-
ROBBINS FRANCHISED SHOPS, LLC,
and DB REAL ESTATE ASSETS I, LLC,

    Plaintiffs,

v.

MR. OMAR, INC., a Michigan Corporation,
WAEL ELHAJOMAR, YOUSEF
ALKAWASMIE, individually, jointly, and
severally,

    Defendants.
_____/

Case No. 06-15078

Honorable Patrick J. Duggan

## OPINION AND ORDER GRANTING PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT

At a session of said Court, held in the U.S.
District Courthouse, Eastern District
of Michigan, on March 10, 2008.

PRESENT:     THE HONORABLE PATRICK J. DUGGAN
                  U.S. DISTRICT COURT JUDGE

This lawsuit arises from Mr. Omar, Inc.'s alleged breach of a franchise agreement entered into with Dunkin' Donuts Franchised Restaurants LLC and Baskin-Robbins Franchised Shops LLC and a sub-lease entered into with DB Real Estate Assets I LLC.¹

---

¹Unless otherwise specified, Dunkin' Donuts Franchised Restaurants LLC, Baskin-Robbins Franchised Shops LLC, and DB Real Estate Assets I LLC will be collectively referred to as "Plaintiffs" or "Franchisors" in this Opinion and Order.
    Furthermore, unless otherwise specified, Mr. Omar, Inc. and Wael Elhajomar will

On November 13, 2006, Plaintiffs filed a complaint in this Court asserting the following counts: Count I (Declaratory Judgment – Termination of Franchise Agreement and Lease and Injunctive Relief); Count II (Trademark Infringement); Count III (Breach of Franchise Agreement); Count IV (Breach of Lease); and Count V (Breach of Personal Guarantees). Presently before this Court is Plaintiffs' Motion for Partial Summary Judgment. On February 11, 2008, the Court sent the parties a notice stating that the Court is dispensing with oral argument on Plaintiffs' motion. *See* E.D. Mich. LR 7.1(e)(2). The next day, on February 12, 2008,[2] Defendants filed a response to Plaintiffs' motion, to which Plaintiffs have replied.

## I. Background

On February 18, 2003, Plaintiffs' predecessors entered into a franchise agreement with Mr. Omar, Inc. ("Mr. Omar")(hereinafter referred to as the "Franchise Agreement"). (Compl. Ex. A.) Defendant Wael Elhajomar, the president and sole shareholder of Mr. Omar, signed the Franchise Agreement as guarantor of Mr. Omar's monetary obligations. (Compl. Ex. A at 27.) In addition to the Franchise Agreement, on August 23, 2000, Third Dunkin' Donuts Realty, Inc., predecessor to DB Real Estate Assets I LLC, entered into a

---

be collectively referred to as "Defendants" in this Opinion and Order. Moreover, the Court also notes that the parties' filings in this case sometimes refer to Defendant Wael Elhajomar as Wael Elhajormar. This Court will use Elhjomar in this Opinion and Order.
     Finally, on March 4, 2008, Plaintiffs voluntarily dismissed all of their claims against Defendant Yousef Alkawasmie pursuant to Rule 41(a)(1)(i) of the Federal Rules of Civil Procedure.

    [2] As Plaintiffs point out, Defendants' response was untimely filed. *See* E.D. Mich. LR 7.1(d)(1)(B)(providing that "[a] response to a dispositive motion must be filed within 21 days after service of the motion").

sub-lease with Mr. Omar (hereinafter referred to as the "Lease").[3] Wael Elhajomar, in his individual capacity, guaranteed the performance of Mr. Omar under the terms of the Lease. (*Id.* at 11.)

On December 6, 2005, Plaintiffs notified Mr. Omar that it was in default under the Franchise Agreement and Lease due to its failure to pay the required franchising fees, advertising fees, and rent. (Compl. Ex. D.) The December 6, 2005 Notice to Cure stated:

> This Notice shall serve as fifteen (15) days' prior written notice that Baskin Robbins/Dunkin' Donuts intend to terminate your franchise for your failure to pay advertising and franchise fees in the amount of $2,159.57 for Baskin Robbins and $6,8321.20 for Dunkin', late charges in the amount of $9.92 for Baskin Robbins and $94.92 for Dunkin', rent in the amount of $6,066.67 for Dunkin' and a tax deficit in the amount of $758.13 for Dunkin', payable pursuant to your Franchise Agreement and Lease Agreement.

(*Id.*)

Plaintiffs sent three more Notices to Cure on January 27, 2006, June 8, 2006, and July 25, 2006. (Compl. Ex. E-G.)

On September 13, 2006, Plaintiffs sent a Notice of Termination to Mr. Omar. (Compl. Ex. H.) The Notice of Termination stated that it "shall serve as an additional notice of the Termination of your above-referenced Franchise Agreement with Baskin Robbins and Dunkin' Donuts ('Franchisor') and any Lease with Franchisor, effective

---

[3]The Lease is subject to the terms of the Franchise Agreement. (Compl. Ex. B ¶ 14.) Consequently, any default under the terms of the Lease results in a default under the Franchise Agreement. (*Id.* ¶ 9.0.5.) Furthermore, if the Franchise Agreement is terminated for any reason, DB Real Estate Assets I LLC has the right to terminate the Lease. (*Id.*)

immediately." (*Id.*) In addition, Mr. Omar was notified that "[p]ursuant to Paragraph 9.1.4 of your Franchise Agreement, a cure period is no longer available to you since you did not timely cure the defaults." (*Id.*)

Notwithstanding the four separate Notices to Cure, the Notice of Termination, and this Court's May 3, 2007 order, requiring Defendants to vacate the leased premises by June 25, 2007, (Doc. No. 17), Plaintiffs allege that Defendants did not pay the past due franchise and rental obligations; nor did Defendants vacate the leased premises. In fact, Plaintiffs argue that Defendants continued to operate the franchised location beyond the June 25, 2007 deadline. Moreover, after finally vacating the franchised location, Plaintiffs contend that Defendants "left the [franchised] location in complete disarray including cutting some of the equipment from the plumbing pipes rather than disconnecting the same at the connections." (Pls.' Mot. Ex. 2, Certification of Stephen Collin ("Collin Cert.") ¶ 15.)

Plaintiffs now move for partial summary judgment as to Count III (Breach of Franchise Agreement), Count IV (Breach of Lease), and Count V (Breach of Personal Guarantees) of their complaint. As a result of Defendants alleged breaches of the Franchise Agreement, Lease, and personal guarantees, Plaintiffs contend that Defendants owe the following amounts:

> (a) franchise fees and advertising fees through June 27,. 2007 in the amount of $76,995.79; (b) rent and percentage rent as of June 30, 2007 in the amount of $79,348.98; (c) back property taxes owed through June 30, 2007 in the amount of $4,040.00, and; (d) legal fees and costs in the current amount of $81,957.27, which are accruing, and related charges and fees as required by the Franchise Agreement.

4

(Pls.' Mot. Ex. 3, Certification of Donna Szegda ("Szegda Cert.") ¶ 15.)

## II. Standard of Review

This Court will grant summary judgment "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). No genuine issue of material fact exists for trial unless, by viewing the evidence in a light most favorable to the nonmoving party, a reasonable jury could return a verdict for that party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510 (1986). The moving party bears the burden of informing this Court of the basis for its motion and identifying those portions of the record that establish the absence of a material issue of fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553 (1986).

Once the moving party has met its burden, Rule 56(e)(2) requires the nonmoving party to look beyond the pleadings and designate specific facts showing that a genuine issue exists for trial. FED. R. CIV. P. 56(e)(2); *Celotex*, 477 U.S. at 322-24, 106 S. Ct. at 2552-53. It is not enough that the nonmoving party comes forward with the "mere existence of a scintilla of evidence . . . ," *Anderson*, 477 U.S. at 252, 106 S. Ct. at 2512, or some "metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S. Ct. 1348, 1356 (1986). Rather, the nonmoving party must present significant probative evidence in support of its opposition to the motion for summary judgment. *Moore v. Philip Morris Cos., Inc.*, 8 F.3d 335, 340 (6th Cir. 1993).

### III. Applicable Law and Analysis

####    A.    Breaches of the Franchise Agreement, Lease, and Guaranty Agreements

Plaintiffs assert that Defendants have breached the Franchise Agreement, Lease, and personal guarantees. First, Plaintiffs argue that Defendants breached the Franchise Agreement by failing to refurbish the franchised location in accordance with the Franchisor's refurbishment standards by May 6, 2005, as required by § 5.5 of the Franchise Agreement. (Compl. Ex. A, Franchise Agreement (hereinafter referred to as "Franchise Agreement") § 5.5.) In addition, Plaintiffs contend that Defendants breached the Franchise Agreement by failing to pay advertising and franchise fees, including the late fees, interest, and costs associated with unpaid advertising and franchise fees, as required by §§ 4.3, 4.4, 4.7, and 9.3 of the Franchise Agreement. (*Id.* §§ 4.3, 4.4, 4.7, and 9.3.) The Franchise Agreement provides that failing to refurbish the franchised location, pay the advertising fees, or pay the franchise fees constitutes a default. (*See id.* § 9.0.5.) Moreover, Plaintiffs also contend that Defendants have breached and are in default under both the Lease and the Franchise Agreement by failing to pay rent, percentage rent, and property taxes, and failing to cure such defaults after receiving notice, as required by the Lease. (Compl. Ex. B, Lease Agreement §§ 11(a)-(b) and (i), 18(b)(1), (d).) Finally, Plaintiffs assert that Defendant Wael Elhajomar has breached his personal guarantees of both the Franchise Agreement and Lease by failing to cure Defendant Mr. Omar's defaults under the Franchise Agreement and Lease.

In support of their contentions, Plaintiffs submit the certifications of Mr. Stephen Collin, Operations Manager for Franchisors, and Ms. Donna Szegda, Collections

6

Specialist for Franchisors. In his certification, Mr. Collin states that Defendants failed to refurbish the franchised location and that the Franchise Agreement was terminated due to Defendants' "failure to pay advertising and franchise fees, miscellaneous charges, rent, real estate taxes, late charges and attorneys fees as required by the Franchise Agreement and lease documents." (Collin Cert. ¶¶ 5-6.) Ms. Szegda attests to the Notice of Cures and the Notice of Termination Plaintiffs sent to Defendants. (Szegda Cert. ¶¶ 6-10.) In addition, Ms. Szegda states that Mr. Omar defaulted under the Franchise Agreement and Lease by failing to pay the required fees and rent and by failing to refurbish the franchised location by May 6, 2006. (*See id.* ¶¶ 11-14.)

Defendants, in their response brief, do not dispute the terms or the alleged breaches of the Franchise Agreement, Lease, or Defendant Elhajomar's personal guarantees. Rather, Defendants argue that they are not bound by the Franchise Agreement, Lease, and the personal guarantees because: (1) Defendant Elhajomar lacked the requisite mental capacity to enter into these agreements at the time the agreements were signed; and (2) Plaintiffs falsely represented to Defendant Elhajomar that he passed a franchise examination thereby fraudulently inducing him to enter into the Franchise Agreement.[4]

In support of their contentions, Defendants submit the Affidavit of Wael Elhajomar (hereinafter referred to as "Elhajomar Aff."). In his affidavit, Mr. Elhajomar states that: (1) he has "read Plaintiffs' Motion for Partial Summary Judgment and the alleged facts

---

[4]Defendants made similar arguments in their "Motion for Leave of Court to Amend Its Answer to Include Counter-Complaint and Its Affirmative Defenses," (*See* Doc. No. 16), which this Court denied in an Opinion and Order issued on October 22, 2007. (Doc. No. 20.)

are inaccurate;" (2) "[t]he contract entered into between [himself] and [Plaintiffs] was procured by fraud and misrepresentation;" (3) "[a]s a result of previous head trauma, [he] suffer from a mental defect and was of unsound mind at the time of signing the contract;" and (4) "[his] mental state prevented [him] from forming a reasonable perception of the nature or terms of the contract." (Elhajomar Aff. ¶¶ 1-4.) Defendants argue that Mr. Elhajomar's affidavit creates genuine issues of material fact, and thus, this Court should deny Plaintiffs' motion.

This Court disagrees with Defendants and believes that Mr. Elhajomar's affidavit suffers from at least two defects. First, this Court does not believe that the conclusory statements in Mr. Elhajomar's affidavit are sufficient to withstand Plaintiffs' properly supported motion for partial summary judgment. *See* FED. R. CIV. P. 56(e)(2)(stating that when a party opposes a properly supported motion for summary judgment with an affidavit, the party must set forth "specific facts showing a genuine issue for trial"). Second and most importantly, Mr. Elhajomar's affidavit states that he has read Plaintiff's motion "and the alleged facts are inaccurate," and he then attests to his own "unsound mind" or mental incapacity. In this Court's opinion, if Mr. Elhajomar lacked the mental capacity necessary to contract, as he attests, then he is certainly not "competent to testify on the matters" stated in his affidavit. *See* FED. R. CIV. P. 56(e)(1).[5] Consequently, this Court does not believe that Mr. Elhajomar's affidavit is sufficient to create a genuine

---

[5]Federal Rule of Civil Procedure 56(e)(1) provides, in pertinent part: "A supporting or opposing affidavit must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on the matters stated."

issue of material fact as to whether he had the mental capacity to contract or whether Plaintiffs falsely represented that he passed the franchise examination. The remaining question, then, is whether Plaintiffs have satisfied their burden in showing that there are no genuine issues as to any material facts necessary to prove Counts III, IV, and V of their complaint.

Under Massachusetts law,[6] to succeed on a breach of contract claim, plaintiffs must prove: (1) "that the parties had an agreement supported by valid consideration; (2) that plaintiffs were ready, willing and able to perform; (3) that defendant's breach has prevented them from performing; and (4) that plaintiffs were damaged." *Doyle v. Hasbro, Inc.*, 103 F.3d 186, 194 (1st Cir. 1996)(citing *Singarella v. Boston*, 173 N.E.2d 290, 291 (Mass. 1961))(additional citation omitted). Moreover, "[t]he interpretation of an unambiguous contract is a question of law for the court." *Lawrence-Lynch Corp. v. Dep't of Envtl. Mgmt.*, 467 N.E.2d 838, 840 (Mass. 1984)(citation omitted).

Based on the exhibits attached to Plaintiffs' complaint, the certifications of Mr. Collin and Ms. Szegda, and Defendants' failure to proffer probative evidence showing

---

[6]The Franchise Agreement provides that all disputes between the parties "shall be governed by the law of the Commonwealth of Massachusetts without regard to choice of law principles." (Franchise Agreement § 11.3.) Defendants do not object to the application of Massachusetts law to Counts III, IV, and V of Plaintiff's complaint. Even if Defendants did, there is no material difference in the elements for a breach of contract claim under Michigan law, and thus, the result in this case would be the same if the Court applied Michigan law. *See, e.g., Green Leaf Nursery, Inc. v. KMART Corp.*, 485 F. Supp. 2d 815, 818 (E.D. Mich. 2007)("Under Michigan law, the elements of a breach of contract claim are the following: (1) a contract existed between the parties, (2) the terms of the contract required performance of certain actions, (3) a party breached the contract, and (4) the breach caused the other party injury.")

that there are material facts in dispute, this Court finds that there is no genuine issue of material fact that Mr. Omar breached the Franchise Agreement and Lease and that Mr. Elhajomar breached the personal guarantees, and as a result, Plaintiffs were damaged. Therefore, Plaintiffs are entitled to partial summary judgment against Defendants as to Counts III, IV, and V of their complaint.

### B. Damages Owed by Defendants

As stated above, *supra* pages 4-5, Ms. Szegda's certification sets forth specific monetary amounts Plaintiffs contend Defendants owe as a result of their breaches of the Franchise Agreement, Lease, and personal guarantees. (Szegda Cert. ¶ 15.) In their response brief, Defendants argue that although they do "not contend that no fees are in fact owed," they dispute the amount of fees owed. (Dfts.' Resp. Br. at 7.) Defendants also contend that Mr. Elhajomar has yet to be deposed; therefore, Defendants rely on Mr. Elhajomar's affidavit to create a genuine issue of material fact as to the amounts Plaintiffs claim are owed.

The Court does not find Defendants' arguments persuasive. As an initial matter, with regard to the amount of damages owed, Mr. Elhajomar's affidavit merely states that he disputes "the amount claimed by the Plaintiffs." (Elhajomar Aff. ¶ 6.) Mr. Elhajomar's conclusory statement, without more, does not create a genuine issue of material fact. FED. R. CIV. P. 56(e). Moreover, to the extent that Defendants are suggesting that additional discovery is needed to ascertain the amounts owed, discovery was to be completed by January 31, 2008, (Doc. No. 21, Scheduling Order), and Defendants have failed to file an affidavit complying with Rule 56(f) of the Federal Rules

of Civil Procedure. *See, e.g., Cacevic v. City of Hazel Park*, 226 F.3d 483, 488 (6th Cir. 2000)("The importance of complying with Rule 56(f) cannot be overemphasized. 'If the appellant has not filed either a Rule 56(f) affidavit or a motion that gives the district court a chance to rule on the need for additional discovery, this court will not normally address whether there was adequate time for discovery.'")(quoting *Plott v. Gen. Motors Corp.*, 71 F.3d 1190, 1196 (6th Cir. 1995). Consequently, Defendants have failed to create a genuine issue of material fact on the damages owed as a result of their breaches of the Franchise Agreement, Lease, and personal guarantees.

Nevertheless, the Court is reluctant to accept the amounts listed in Ms. Szegda's certification without any indication of how the listed amounts were calculated. In addition, the Court notes that among the amounts listed in Ms. Szegda's certification are "legal fees and costs in the current amount of $81,957.27." (Szegda Cert. ¶ 15.) This amount is close to the $91,029.50 in attorney fees Plaintiffs are seeking in their "Motion for Bill of Costs, For Rule 11 Sanctions And For An Award of Attorney Fees Against Defendants and Counsel" filed on February 15, 2008. To the extent that the amounts requested in Plaintiffs' present motion overlap with the amounts requested in Plaintiffs' February 15, 2008 motion, Plaintiffs must set forth how they calculated the $81,957.27 in attorney fees requested in their present motion and whether some or all of these fees are included in the $91,029.50 in attorney fees Plaintiffs request in their February 15, 2008 motion. In light of these uncertainties, the Court will order Plaintiffs to submit a detailed and accurate accounting of the damages they claim are owed by Defendants as a result of the aforesaid breaches, including the specific provisions of the Franchise Agreement,

Lease, and/or personal guaranty pursuant to which Plaintiffs are claiming such amounts.

### C. Counts I and II of Plaintiff's Complaint Will Be Dismissed As Moot

In their reply brief, Plaintiffs, among other requests, request that this Court dismiss the "remainder of the [c]omplaint as moot." (Pls.' Rep. Br. at 3.) Count I of Plaintiff's complaint requests a declaratory judgment "declaring that the Franchise Agreement and Lease terminated as of September 13, 2006, and enjoining Defendant, its employees, agents, servants, or persons acting on behalf from using Franchisor's trademarks and names and from holding itself out to the public as, and from operating as, a Dunkin' Donuts and/or Baskin-Robbins franchisee." (Compl. ¶ 54.) In addition, Count II asserts a claim for trademark infringement requesting that Defendants be permanently enjoined from using Plaintiffs' trademarks. (*Id.* ¶¶ 66-67.) As Plaintiffs contend, Counts I and II were rendered moot by the Court's May 3, 2007 Order, entered by stipulation of the parties, which permanently enjoined Defendants from using Plaintiffs' trademarks and required Defendants to vacate the franchised location. (*See* Doc. No. 16 at 4-6.) Therefore, the Court will dismiss Counts I and II of Plaintiffs' complaint as moot.

Accordingly,

**IT IS ORDERED** that Plaintiffs' Motion for Partial Summary Judgment as to liability is **GRANTED**.

**IT IS FURTHER ORDERED** that Counts I and II of Plaintiffs' complaint are **DISMISSED AS MOOT**.

**IT IS FURTHER ORDERED** that Plaintiffs submit a detailed and accurate accounting of the damages they claim are owed by Defendants as a result of the breaches

of the Franchise Agreement, Lease, and personal guarantees, including the specific provisions of the Franchise Agreement, Lease, and/or personal guaranty pursuant to which Plaintiffs are claiming such amounts, within fifteen (15) days of the date of this Opinion and Order. Defendants may file a response to Plaintiffs' accounting within fifteen (15) days of its service upon them.

                                                 s/PATRICK J. DUGGAN
                                                 UNITED STATES DISTRICT JUDGE

Copies to:
Kevin A.S. Fanning, Esq.
Douglas R. Kelly, Esq.
Mohamed J. Zaher, Esq.